# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00177-CV

---

**Teerachai Supakorndej, Appellant**

**v.**

**Shang Xu, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-003565, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Teerachai Supakorndej challenges certain terms of the district court's judgment dissolving his marriage to Shang Xu. We affirm.

### BACKGROUND[1]

Supakorndej and Xu married in January 2017, and Xu filed for divorce in June 2018. They reached an agreement on the division of property but not on conservatorship or possession of their child, A.S. The district court held a hearing on the disputed issues in April 2019.

The parties were the only witnesses at trial. According to their testimony, Supakorndej is a dentist who owns his own practice and Xu works for Apple in supply chain

---

[1] We take the following facts from the parties' testimony and the exhibits admitted at trial.

planning. Before the marriage, Xu lived in a house in Williamson County near her office and Supakorndej lived in an apartment in south Austin near his dental practice. They continued to live separately while married, with Supakorndej spending two nights a week at Xu's house. The arrangement continued after A.S.'s birth in October 2017 while the parties looked for somewhere to live. They eventually purchased a house on Indigo Broom in Westlake and moved in by the end of November.

In May 2018, Xu moved to an apartment with A.S. Xu testified that Supakorndej had shoved her as she moved towards him to take A.S. Xu called the police and Supakorndej was arrested, but the charges were subsequently dismissed. After Xu filed for divorce, an associate judge signed agreed temporary orders that, as relevant here, granted Supakorndej three periods of possession each week: 7:00 PM Monday to 7:00 PM Tuesday, 3:00 PM Thursday to 9:00 AM Friday, and 7:00 PM Saturday to 7:00 PM Sunday. This schedule was still in effect at trial.

At trial, the parties joined issue over who should have the exclusive right to designate A.S.'s primary residence and to make educational decisions for him. They also disagreed over periods of possession and the amount of child support. At the end of the hearing, the district court announced that it would appoint the parties joint managing conservators and grant Xu the decision-making authority she sought. The district court subsequently signed a divorce decree granting Xu the exclusive right to designate A.S.'s primary residence within Travis and Williamson counties and the exclusive right, "after meaningful consultation" with Supakorndej, to make decisions concerning A.S.'s education. The decree maintains Supakorndej's possession schedule from the temporary orders until January 1, 2021, after which

the standard possession order takes effect. The district court also ordered Supakorndej to pay $1,710 in child support each month. This appeal ensued.

## DISCUSSION

Supakorndej argues in four issues that the district court abused its discretion by granting Xu the exclusive rights to designate A.S.'s primary residence and to make educational decisions for him, and by ordering him to pay $1,710 in child support.

### Standard of Review

We review a trial court's decisions concerning conservatorship, possession, and child support for an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (conservatorship); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (child support). A trial court abuses its discretion when it acts without reference to governing rules or principles. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 512–13 (Tex. 2017). Under this standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but are relevant factors in determining whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). When reviewing for an abuse of discretion, we ask first "whether the trial court had sufficient information upon which to exercise its discretion" and, if so, "whether the trial court erred in its application of that discretion." *In re Marriage of Thrash*, 605 S.W.3d 224, 229 (Tex. App.—San Antonio 2020, pet. denied). We use traditional legal- and factual-sufficiency standards to answer the first prong. *Id.*

"The test for legal sufficiency is 'whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.'" *Teal Trading & Dev., LP*

3

*v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 333 (Tex. 2020) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We credit evidence favoring the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* In a factual-sufficiency review, we consider the entire record and will "set aside the finding only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust." *Gonzales v. Maggio*, 500 S.W.3d 656, 662 (Tex. App.—Austin 2016, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). Under either standard, the trier of fact is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

**Conservatorship and Possession**

Supakorndej argues in his first three issues that the district court abused its discretion by granting Xu the exclusive right to designate A.S.'s primary residence and to make educational decisions for A.S., and by ordering that he have less than equal periods of possession.

"The best interest of the child" is the court's "primary consideration" in "determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code § 153.002. Because such determinations are "intensely fact driven," *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002), trial courts have "wide latitude" in determining a child's best interest, *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Texas courts typically use the non-exhaustive *Holley* factors to determine the best interest of the child in a conservatorship proceeding. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also Zeifman*,

4

212 S.W.3d at 595 (applying *Holley* factors to determine best interest in conservatorship proceeding). Those factors include:

- the child's desires;

- the child's present and future emotional and physical needs;

- any present or future emotional and physical danger to the child;

- the parental abilities of the individuals seeking custody;

- the programs available to assist the individuals seeking custody to promote the child's best interest;

- the plans for the child by the individuals seeking custody; and

- the stability of the home or proposed placement;

*Holley*, 544 S.W.2d at 371–72. "Proof of best interest is not limited to these factors, nor do all factors always apply in every case." *In re S.A.H.*, 420 S.W.3d 911, 926 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

We first consider whether the district court had sufficient evidence to grant Xu the exclusive rights to designate A.S.'s primary residence and to make educational decisions for him. Supakorndej argues that his trial testimony establishes that Xu was the source of their problems in communicating and co-parenting. For example, Supakorndej testified that Xu once insisted that he take A.S. to the emergency room but would not give him A.S.'s insurance card. Supakorndej further testified that Xu refused to treat A.S.'s eczema for months even after he discussed it with her multiple times. However, Xu's testimony reflects that Supakorndej contributed to their difficulties. For example, Xu testified that Supakorndej refused to take A.S. to the hospital unless she provided a car seat with a handle that would enable Supakorndej to carry him. On another occasion, they disagreed over Xu's decision to keep A.S. home from

5

daycare at the daycare's request because he experienced diarrhea, and the child's pediatrician diagnosed an infection. The evidence includes a text exchange between the parties in which Supakorndej wrote: "Moron doctor doesn't know medicine. Misdiagnosed everything, and you believe him," and "I want to go to this daycare and drop him off. They're idiots."

The parties also testified to longstanding disagreements over where to reside. Xu testified that they did not live together after the marriage because Supakorndej "refused to move in" because her house was too far from his dental practice. Xu testified that they chose the house on Indigo Broom because it was close to their offices, but Supakorndej testified that Xu insisted on the house because of the quality of the schools. Supakorndej further testified that Xu moved out of the house because the commute to her work and to A.S.'s daycare was too difficult.

As for the parties' plans, Supakorndej testified that he wants to continue living in the house on Indigo Broom with his mother and have A.S. attend school in the area. Xu, in contrast, plans eventually to return to the house in Williamson County so that A.S. can attend school there. Xu testified that she wants A.S. to attend a Montessori school and that she started looking for one after separating from Supakorndej. She toured several schools and placed A.S. on the waiting list for one but did not tell Supakorndej "because the conversation with him is always difficult." In contrast, Supakorndej testified that the parties had been looking for a Montessori school together for months before the separation and that he placed A.S. on the waiting list for one in February 2018. Xu, however, denied knowledge of this.

In sum, the district court heard testimony from both parties that they had difficulties in communicating and making decisions, especially regarding their residence and where A.S. would attend school. We will not second-guess the district court's evaluation of their credibility and resolution of conflicts in their testimony. *See Syed v. Masihuddin*, 521 S.W.3d 840,

6

848 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("When the testimony of witnesses is conflicting, we will not disturb the credibility determinations made by the fact finder, and we will presume that it resolved any conflict in favor of the verdict."); *see also Johnson v. Johnson*, No. 03-19-00196-CV, 2020 WL 4726589, at *11 (Tex. App.—Austin Aug. 13, 2020, no pet.) (mem. op.) (finding no abuse of discretion when testimony conflicted because "we will not second-guess the trial court's evaluation of witness credibility or its resolution of conflicts in the testimony"). We conclude there is legally and factually sufficient evidence to support a conclusion that it is in A.S.'s best interest to grant Xu the rights to designate his primary residence and to make educational decisions for him.

Supakorndej also challenges the evidence supporting the district court's decision to order a modified possession schedule. He contends there was no evidence to support "deviat[ing] from the parties' equal possession and access schedule under the temporary orders or the standard possession order." Although Supakorndej assumes that there is a presumption favoring granting each parent an equal period of possession, appointment of a child's parents as joint managing conservators "does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators." *See* Tex. Fam. Code § 153.135; *see also In re J.R.D.*, 169 S.W.3d 740, 744 (Tex. App.—Austin 2005, pet. denied) ("While there is a statutory presumption that the parents be appointed joint managing conservators, there is no comparable statutory presumption that the award of equal periods of possession is in the children's best interest."). To the extent Supakorndej argues the district court should have imposed the standard possession order immediately, we again disagree. Although there is a "rebuttable presumption" that the standard possession order is in the best interest of the child, the presumption does not apply to children under the age of three. *See* Tex.

7

Fam. Code §§ 153.252, .254. A.S. was eighteen months old at trial. For a child that age, the "court shall render an order appropriate under the circumstances for possession" after taking certain statutory factors into account. *Id.* § 153.254(a). The court shall also "render a prospective order to take effect on the child's third birthday, which presumptively will be the standard possession order." *Id.* § 153.254(d). The divorce decree here maintains the possession schedule from the temporary orders until January 1, 2021, two months after the child's third birthday. After that time, the standard possession order takes effect. Supakorndej does not explain why maintaining the possession schedule from the temporary orders—the very arrangement he requested in his brief—under January 2021 was an abuse of discretion. On this record, we conclude Supakorndej has failed to show the district court abused its discretion.

We overrule Supakorndej's first three issues.

**Child Support**

Supakorndej contends in his final issue that there is insufficient evidence to support ordering him to pay Xu $1,710 in child support per month. To calculate child support liability, a court determines the obligor's monthly "net resources" and then applies the statutory guidelines to that amount. *See* Tex. Fam. Code §§ 154.061(a), .062, .125. The resulting figure is presumed to be a reasonable amount of support and in the best interest of the child. *See id.* § 154.122.

The district court determined that Supakorndej's net monthly resources exceed $8,550 per month. Applying the guidelines to that figure, the district court set Supakorndej's child support obligation of $1,710 a month. Supakorndej does not dispute that the district court correctly applied the guidelines but challenges the evidence of his net monthly resources.

8

Specifically, he contends that the only evidence of his monthly resources is his tax returns, none of which support the ruling.[2] The district court admitted Supakorndej's tax returns for the 2015, 2016, and 2017 tax years, each of which shows either negative or modest taxable income resulting from his dental practice. However, the district court expressly found that the tax returns were not "credible evidence of the actual income derived from his solely-owned dental practice." Supakorndej does not challenge the district court's finding in his appellate briefs, and the record amply supports it. *See In re J.C.*, 594 S.W.3d 466, 468 n.2 (Tex. App.—Fort Worth 2019, no pet.) ("Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings."). Supakorndej refused multiple times to testify that the figures on his tax returns were accurate. He explained that his mother "handles the finances," including preparing his tax returns, and that he is not involved. When pressed by Xu's counsel to confirm the accuracy of the figures on the 2016 tax return, Supakorndej replied "And I've already responded to you I'm not in charge of the finances. I will assume these numbers are correct." Shown the 2017 return, he said "I'm seeing this for the first time today. I just go there, I go to H&R Block, and I sign the papers. I don't know anything about taxes. I'm a doctor. I don't do taxes."

Even though Supakorndej's testimony supports the district court's finding related to his tax returns, there must be some evidence to support the district court's calculation of his net monthly resources. Supakorndej acknowledged at trial that he stated at the temporary orders hearing that his yearly income was $140,000 a year. Determination of net monthly resources begins by ascertaining the obligor's gross annual income and then recalculating to determining

---

[2] Supakormdej also cites to figures in his proposed support decision, but that document was not admitted into evidence.

the obligor's net annual income. *See* Tex. Fam. Code § 154.061(a). The Office of the Attorney General annually promulgates charts that compute net monthly income from gross monthly income. *Id.* § 154.061(b). When an obligor's net monthly resources exceed $11,411.40, the court is to apply the guidelines to the first $11,411.40. *See id.* § 154.126.[3] Xu confirmed at trial that Supakorndej stated at the temporary orders hearing that his annual income was $140,000. This uncontested testimony is some evidence that his average gross monthly wages are over $11,600. *See Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235–36 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding wife's uncontroverted testimony that husband makes $150,000 "some evidence" of $6,000 in gross monthly wages). The Attorney General's 2019 tax chart thus sets Supakorndej's monthly resources at $8,550 dollars. Supakorndej does not dispute that applying the guidelines to that amount yields a child support obligation of $1,170. We conclude there is sufficient evidence to support the district court's child-support award, and we overrule Supakorndej's fourth issue.

## CONCLUSION

Having found no abuse of discretion, we affirm the district court's judgment.

_____

Edward Smith, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed: January 7, 2021

---

[3] The Office of the Attorney General adjusts the cap every six years to account for inflation. *See* Tex. Fam. Code § 154.125(a-1). There is no dispute the cap was $11,411.40 at all relevant times.